UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DAVID EASTMAN, III, | No. ED CV 09-2126-PLA |
| Petitioner, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 20, 2009, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 23, 2009, and December 30, 2009. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 24, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on November 14, 1986. [Administrative Record ("AR") at 49, 56.] He has a tenth grade education and no past work experience. [AR at 60, 63, 213.]

On February 28, 2005, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been disabled since October 1, 2003, due to bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and anger management problems. [AR at 49-50, 56-64.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 34-48.] The hearing was held on July 5, 2007, at which time plaintiff appeared with counsel and testified on his own behalf. Plaintiff's mother and a vocational expert ("VE") also testified. [AR at 209-30.] On July 24, 2007, the ALJ determined that plaintiff was not disabled. [AR at 8-17.] On October 1, 2007, the Appeals Council denied plaintiff's request for review. [AR at 3-5.] On December 17, 2007, plaintiff filed a complaint in this Court in Case No. ED CV 07-1522-PLA. [See AR at 287.] On August 26, 2008, the Court entered judgment for plaintiff and remanded the case back to the ALJ for further proceedings. [AR at 254, 287-94.] On remand, the ALJ held another hearing on February 25, 2009, at which time plaintiff appeared with counsel and again testified on his own behalf. Plaintiff's mother and a VE also testified. [AR at 317-43.] On August 19, 2009, the ALJ issued an opinion again finding plaintiff not disabled. [AR at 231-40.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since February 28, 2005, the date of his application. [AR at 235.] At step two, the ALJ concluded that plaintiff "has the following severe impairment[s]: marijuana abuse and dependence, in apparent total recent remission[;] substance induced with protracted withdrawal induced irritability, mild, not sustained[;] and possible personality disorder with dependent and manipulative personality traits." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 236.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform entry level work at all exertional levels but with the limitations of working with things rather than people and no production quotas. [AR at 237.] At step four, the ALJ concluded that plaintiff had no past relevant work. [AR at 239.] At step five, the ALJ found, relying on the VE's testimony, that there are jobs existing in significant numbers in the national economy that plaintiff is capable of performing. [AR at 239-40.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 240.]

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ did not properly: 1) consider the opinion of psychiatric examiner Dr. David Bedrin; 2) determine plaintiff's RFC; 3) comply with the Appeals Council's remand order; and 4) determine that plaintiff can perform other work. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**THE ALJ'S CONSIDERATION OF DR. BEDRIN'S OPINION IN DETERMINING THE RFC AND SOLICITING VE TESTIMONY**

Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. David Bedrin, a consultative psychiatric examiner. [JS at 4-7.] Specifically, plaintiff asserts that the ALJ erred in failing to include in his RFC determination and in his hypothetical questions to the VE Dr. Bedrin's opinion that plaintiff is limited to work involving simple one- and two-step instructions, and that the ALJ did not properly reject Dr. Bedrin's opinion in this regard. [JS at 6, 11-13, 17.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see Social Security Ruling[2] 96-8p, 1996 WL 374184, at *5, *7. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).

---

[2] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews, 53 F.3d at 1043).

On May 12, 2005, Dr. Bedrin completed a Complete Psychiatric Evaluation of plaintiff, in which he concluded that plaintiff has a Global Assessment of Functioning score of 60.[3] Dr. Bedrin also opined that plaintiff could follow simple one- and two-step job instructions, but may be impaired in carrying out complex job instructions secondary to memory and concentration problems, and that he has no impairment in his abilities to relate to supervisors or coworkers or deal with the public. [AR at 112-16.]

In the August 26, 2008, Memorandum Opinion and Order in Case No. ED CV 07-1522-PLA, this Court reversed the ALJ's 2007 decision, in part, because he failed to include in a hypothetical question to the VE Dr. Bedrin's assessment of plaintiff's functional limitations and did not properly reject his opinion. Specifically, in finding remand warranted on this issue, the Court noted that the ALJ's hypothetical only included the limitations of entry level work and working with things rather than with people, and that the limitation to entry level work did not cure the ALJ's error of failing to include Dr. Bedrin's findings in the hypothetical. [AR at 227, 291-93.]

---

[3] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score from 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See DSM-IV, at 34.

At the February 25, 2009, hearing, following remand, the ALJ posed two hypothetical questions to the VE, neither of which included Dr. Bedrin's limitation of work involving simple one- or two-step instructions. In the first hypothetical, the ALJ asked the VE if a hypothetical person of plaintiff's age, education level, and with no work experience who was "restricted to entry-level work and working strictly with things rather than with people, and also no production quotas in the nature of conveyor belt or piece-work," could perform jobs in the national or regional economy. [AR at 341.] The VE responded that such a person could perform the jobs of an unskilled cleaner, Dictionary of Occupational Titles ("DOT") No. 381.687-018; grounds keeper, DOT No. 406.687-010; and room attendant, DOT No. 222.387-030. [Id.] In the second hypothetical, the ALJ asked if the same person in the first hypothetical with the additional limitation of being off-task 20 percent of the time due to psychological symptoms could perform any work. The VE responded that there would not be any work that such a person could perform. [Id.]

After the 2009 hearing, the ALJ ordered a new consultative examination. [See AR at 324.] On March 25, 2009, Dr. Kent Jordan completed a Complete Psychiatric Evaluation of plaintiff. [AR at 308-13.] Dr. Jordan opined that plaintiff "appeared to embellish psychiatric symptomatology" because he reported an inability to get along with authority figures or control his behavior, but exercised adequate control and accepted instructions during the Evaluation. [AR at 308.] Dr. Jordan also reported that plaintiff acknowledged that he had used marijuana daily "as an alternative medication" up until three months before the Evaluation. [AR at 310.] Dr. Jordan opined that "[m]uch of [plaintiff's] reported irritability could be protracted withdrawal from marijuana which is currently fairly adequately in remission though[] this is uncertain." [AR at 312.] He gave plaintiff a GAF score of 60-65[4] and opined that plaintiff had, among other things, adequate concentration and attention and that if plaintiff remained sober, he could perform detailed and complex tasks on a sustained basis without special supervision; maintain regular attendance and

---

[4] A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. at 34.

perform work consistently; accept instructions from supervisors; interact with coworkers and the public; and deal with the usual stressors of competitive employment. [AR at 311-12.]

### 1. The ALJ's Consideration of Dr. Bedrin's Opinion in the 2009 Decision

In the 2009 decision, the ALJ did not include in the RFC determination Dr. Bedrin's opinion that plaintiff can perform simple one- or two-step instructions, but may be impaired in completing complex tasks, nor did the ALJ expressly or properly reject Dr. Bedrin's findings. Rather, the ALJ's only reference to Dr. Bedrin's opinion in the decision was the ALJ's statement: "At the time of the initial determination a State agency psychiatrist discounted the finding of the consultative psychiatric examiner, who had assessed a GAF score of 60, indicating a marginally moderate degree of limitation."[5] [AR at 235-36.] Notably, although the ALJ relied on the information about plaintiff's marijuana use to discount plaintiff's and his mother's credibility [see AR at 236-37], the ALJ did not rely on Dr. Jordan's Evaluation as a basis for rejecting the findings of Dr. Bedrin. Rather, the ALJ concluded that "aside from raising concerns about the accuracy of [plaintiff's and his mother's] reports," the information about plaintiff's marijuana use "leads me to conclude that [plaintiff's] level of functioning has remained unchanged ... since there has been no report of any problems with acute intoxication or any change after the admitted substance abuse went into remission at the end of 2008." [AR at 237.]

Since the ALJ did not include Dr. Bedrin's assessment of plaintiff's mental limitations in the VE hypothetical or the RFC determination, it appears that he implicitly rejected these limitations. This was error. Implicit reasons for rejecting an examining physician's findings are improper

---

[5] Specifically, in referring to Dr. Bedrin's opinion, the ALJ cited the findings of nonexamining state agency physicians Dr. K. Peterson and Dr. K. J. Loomis. [AR at 236, citing the findings of Dr. Bedrin, Dr. Peterson, and Dr. Loomis at AR 115, 117, 156-57.] On May 24, 2005, Dr. Peterson concluded, based in part on Dr. Bedrin's Evaluation, that plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods, and opined that plaintiff had the RFC to perform simple repetitive tasks. [See AR at 117, 119, 135-36.] On August 5, 2005, Dr. Loomis concluded, also based in part on Dr. Bedrin's Evaluation, that plaintiff is moderately limited in his abilities to understand, remember, and carry out detailed instructions and to interact appropriately with the general public, and opined that plaintiff could perform simple repetitive tasks requiring no interaction with the public. [AR at 152-56.]

because they are neither clear nor convincing. Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). To the extent the ALJ rejected Dr. Bedrin's opinion in favor of the nonexamining physicians' opinions, this rejection was also erroneous because Dr. Peterson's and Dr. Loomis' findings were based, at least in part, on Dr. Bedrin's clinical findings.[6] See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1228 (9th Cir. 2010) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.") (quoting Lester, 81 F.3d at 831).[7]

Because the ALJ again failed in the 2009 decision to provide sufficient reasons for rejecting Dr. Bedrin's opinion (even after this Court remanded the ALJ's 2007 decision for proper consideration of this opinion), and the ALJ determined that Dr. Jordan's findings did not change the analysis pertaining to plaintiff's functional limitations, the Court now credits Dr. Bedrin's opinion concerning plaintiff's mental limitations as true. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Because the ALJ failed to provide legally sufficient reasons for rejecting ... [the]

---

[6] Further, it is not clear to the Court that the nonexamining physicians "discounted" the GAF score assessed by Dr. Bedrin, as represented by the ALJ. [See AR at 235.]

[7] To the extent defendant asserts that the ALJ properly disregarded Dr. Bedrin's findings based on Dr. Jordan's Evaluation because defendant assumes that plaintiff's admitted marijuana use (rather than his mental impairments) impacted his ability to concentrate and follow instructions at the time of Dr. Bedrin's Evaluation [JS at 8-9], defendant's assertion is unavailing. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Services, 933 F.2d 735, 738 (9th Cir. 1991); see also Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D. Cal. 1996) ("the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision" and "[i]f the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand") (citation omitted). Here, the ALJ did not rely on Dr. Jordan's findings or plaintiff's admitted marijuana use to reject Dr. Bedrin's assessment of plaintiff's limitations, nor did he conclude (as defendant argues in the Joint Stipulation) that plaintiff's mental functioning improved once he stopped using marijuana. Quite the contrary, the ALJ concluded that plaintiff's level of functioning "**remained unchanged**" when plaintiff stopped using marijuana. [AR at 237 (emphasis added).] Accordingly, Dr. Jordan's Evaluation cannot be a valid basis to disregard Dr. Bedrin's opinion.

physicians' opinions, we credit the evidence as true.") (citing Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Smolen, 80 F.3d at 1281-83; Varney v. Sec'y of Heath and Human Services, 859 F.2d 1396, 1398 (9th Cir. 1988)).

### 2. The ALJ's RFC Determination and Reliance on the VE's Testimony

Since the ALJ did not properly consider Dr. Bedrin's findings, the ALJ's RFC determination and his hypothetical questions to the VE, which did not include Dr. Bedrin's assessment that plaintiff can perform simple one- and two-step instructions but may have difficulty following more complex instructions, were also defective. See Valentine, 574 F.3d at 690; SSR 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."). As explained below, the Court finds that the ALJ also erred in relying on the VE's testimony in finding plaintiff not disabled.

"[T]he best source for how a job is generally performed is usually the [DOT]," and for an ALJ to properly conclude that a job is generally performed in a manner "that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). In finding plaintiff able to perform other work at step five in the 2009 decision, the ALJ relied on the VE's testimony, based on a hypothetical that did not include Dr. Bedrin's opinion of plaintiff's limitations, that plaintiff could perform the work of a cleaner (DOT No. 381.687-018[8]), groundskeeper (DOT No. 406.687-010), and linen room attendant (DOT No. 222.387-030). [AR at 240.] Plaintiff contends that the ALJ erred in relying on the VE's testimony because the jobs identified by the VE require reasoning levels that are inconsistent with plaintiff's limitation of being able to perform work requiring only

---

[8] In the decision, the ALJ cited DOT No. 381.687-010 as the DOT occupation for a cleaner. [AR at 240.] As that DOT number represents the job of a Central-Supply Worker and is not the cleaner DOT number given by the VE [see AR at 341], the Court assumes that the ALJ simply listed DOT No. 381.687-01**0** in error and intended to list DOT No. 381.687-01**8**.

simple one- and two-step instructions. [JS at 19.] Defendant argues that the ALJ's limitation in the RFC and hypothetical of "entry-level work" adequately encompassed Dr. Bedrin's opinion and that the ALJ properly relied on the VE's testimony because the jobs identified by the VE all have specific vocational preparation ("SVP") levels requiring only unskilled work. [See JS at 13, 18, 26.]

All jobs listed in the DOT have general education development ("GED") levels and SVP levels, which are "two separate vocational considerations." Meissl v. Barnhart, 403 F.Supp.2d 981, 983 (C.D. Cal. 2005). "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." Id. (quoting Hall-Grover v. Barnhart, 2004 WL 1529283, at *4 (D. Me. April 30, 2004)). Specifically, the DOT defines GED as "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991). A job's GED level pertains to, among other things, the reasoning development level necessary to perform a job, ranging from 1 (the lowest level) to 6 (the highest level). Id. The DOT defines SVP "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Id. Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level) to 9 (the highest level). Id.

In arguing that the ALJ's hypothetical and the jobs identified by the VE properly encompass Dr. Bedrin's opinion because the jobs identified by the VE have unskilled SVP levels, defendant has improperly conflated the jobs' SVP and GED reasoning levels. Specifically, an SVP level indicating unskilled work has nothing to do with a job's GED reasoning level. See Meissl, 403 F.Supp.2d at 983. The Court finds -- just as it did in its 2007 decision [see AR at 293] -- that the ALJ's limitation of "entry-level work" does not adequately encompass Dr. Bedrin's findings.

In this case, Dr. Bedrin's assessment that plaintiff can perform jobs requiring simple one- and two-step instructions, but may have difficulty carrying out more complex instructions, means that plaintiff is able to perform jobs with a GED reasoning level of 1. See DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991) (defining GED reasoning

development level of 1 as requiring an employee to apply "commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job"); see also Meissl, 403 F.Supp.2d at 983 (providing the same definition of GED reasoning level of 1). The jobs identified by the VE of a cleaner (DOT No. 381-687-018) and groundskeeper (DOT No. 406.687-010) each have a GED reasoning level of 2 (requiring an employee to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations"), and the job of a linen room attendant (DOT No. 222.387-030) has a GED reasoning level of 3 (requiring an employee to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations"). Thus, it appears that all of the jobs identified by the VE have GED reasoning levels that may exceed plaintiff's mental limitations, since Dr. Bedrin opined that plaintiff can perform work with level 1 reasoning, but may be impaired in carrying out more complex instructions. [See AR at 115]; see also, e.g., Grisby v. Astrue, 2010 WL 309013, at * 2 (C.D. Cal. Jan. 22, 2010) ("Level 2 reasoning jobs may be simple, but they are not limited to *one- or two-step instructions.* The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning.").

Because the three jobs identified by the VE have GED reasoning levels that appear to exceed plaintiff's mental limitations assessed by Dr. Bedrin, there is an apparent discrepancy between plaintiff's limitations and the DOT's description of these jobs. However, the ALJ did not solicit testimony from the VE to explain this discrepancy or cite any evidence in the decision supporting this deviation from the DOT. This constitutes error. See Pinto, 249 F.3d at 845-47. Accordingly, remand is warranted on this issue.[9]

/

---

[9] As the Court finds remand warranted, the Court exercises its discretion not to address plaintiff's remaining contention of error.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for ALJ to reconsider his step five finding after he has 1) credited Dr. Bedrin's findings; 2) obtained new vocational expert testimony responsive to a hypothetical question that includes plaintiff's limitations assessed by Dr. Bedrin; and 3) included Dr. Bedrin's findings in the RFC determination.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September 30, 2010

/s/ Paul L. Abrams

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE